NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 10-49287 |
| | : | |
| Andrew Herchakowski | : | Chapter 7 |
| | : | |
| Debtor | : | |
| | : | |
| | : | |
| Geoffrey and Amy Lloyd | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | Adversary No. 11-1679 |
| | : | |
| Andrew Joseph Herchakowski | : | |
| | : | **MEMORANDUM OPINION** |
| Defendant | : | |
| | : | |

## APPEARANCES

Attorneys for Plaintiff
Bunce D. Atkinson, Esquire
Atkinson & DeBartolo
2 Bridge Avenue, PO Box 8415
Building 2, 3rd Floor
Red Bank, New Jersey 07701

Attorney for Defendant
Gary E. Fox, Esquire
Fox & Melofchik, L.L.C.
1001 Deal Road
Ocean, New Jersey 07712

The Plaintiffs seek to have their debt declared nondischargeable under § 523(a)(2)(A) or (a)(6), or to deny the debtor a discharge under § 727(a)(4).  The trial began on July 10, 2012, and concluded on October 18, 2012, and the court reserved decision.  The transcripts were filed on January 2, 2013.   The court presents its findings of fact and conclusions of law in accordance with 28 U.S.C. § 157(c).

<u>Finding of fact</u>

Andrew Herchakowski filed a voluntary Chapter 7 petition on December 21, 2010. The meeting of creditors was scheduled for February 7, 2011.  On January 24, 2011, Mr. Herchakowski filed amended schedules A, C, I, Statement of Financial Affairs and Official Form B22A.  On February 10, 2011, following the first meeting of creditors, Mr. Herchakowski filed amended schedules A – J, Statement of Financial Affairs, Official Form B22A and other amendments.  Mr. Herchakowski filed a third set of amendments on July 13, 2012, which included schedules B, C, I, Statement of Financial Affairs, and Official Form B22A.

This dispute arose in connection with a home remodeling project.  Geoffrey and Amy Lloyd own a home located at 363 Prospect Avenue, Little Silver, NJ.  The Lloyds contacted Mr. Herchakowski in the Spring of 2007 concerning renovations and an addition to their home.  Mr. Herchakowski gave the Lloyds a two-page written proposal dated June 1, 2007 that outlined the general scope of the project and the exclusions.[1]  The proposal included suggested allowances, but noted that it abided further discussion based on the clients' specific product, material, and style choices.  Mr. Herchakowski signed the proposal on June 1 and the Lloyds signed on June 11, 2007.  The proposal gave a "ball park" price of $200,000 for the project subject to a maximum 20% increase or decrease.  The proposal provided for a $10,000 retainer and stated that "a payment schedule will be submitted and followed".  The Lloyds paid the $10,000 retainer

---

[1] Ex. P1; D1

1

by check dated June 11, 2007.[2]  Mr. Herchakowski did not provide the Lloyds with a payment

schedule.  Nonetheless, the Lloyds made additional payments of: $50,000 on July 9, 2007;

$65,000 on November 12, 2007; $30,000 on December 26, 2007; and $30,800 on February 25,

2008.[3]  In January 2008, Mr. Herchakowski sent the Lloyds an invoice for $60,942.40 for

"additional work to project requested by the owners after 6/1/07".[4]

Demolition work began at the property in July 2007.  Work on the project continued on

and off through the summer of 2007 and into 2008.  In early 2008, a dispute arose between the

parties over a mold issue.  Mr. Herchakowski did not continue to work on the project after April

2008.  The Lloyds hired Case Remodeling to complete the project at a cost to them of

$235,108.80.  The Lloyds sued Mr. Herchakowski in Superior Court for violations of the NJ

Consumer Fraud Act and a consent order of partial summary judgment was entered.

<u>Conclusions of law</u>

The court begins its analysis with Count Five, because if the court finds that a denial of

discharge under § 727 is appropriate then consideration of  the § 523 counts is superfluous.

Count Five of the complaint alleges the Debtor's  failure to list various assets in his bankruptcy

petition, schedules, and Statement of Financial Affairs ("SOFA") violated 11 U.S.C. §

727(a)(4)(A).

It is well-settled law that a denial of a debtor's discharge is a drastic remedy, therefore, §

727 must be construed strictly in favor of the debtor.[5]  A discharge in bankruptcy, however, is "a

privilege, not a right, and may only be granted to the honest debtor."[6]  Accordingly, "where a

---

[2] Ex. P2
[3] Ex. P3; P5 – P7
[4] Ex. P8
[5] <u>Rosen v. Bezner</u>, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge … is an extreme step and should not be taken lightly")
[6] <u>Desiderio v. Parikh (In re Parikh)</u>, 456 B.R. 4, 27-28 (Bankr. E.D.N.Y. 2011)

debtor has been dishonest in his dealings with the court or his creditors, it may be appropriate to

deny his discharge, notwithstanding that an underlying goal of federal bankruptcy law is to

provide a debtor with a fresh start."[7]  The creditor opposing discharge has the burden of

establishing the requisite elements by a preponderance of the evidence.[8]

      Section 727(a)(4)(A) provides that the court shall deny the debtor a discharge if "the

debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or

account."[9]  To deny a discharge under §727(a)(4)(A) of the Bankruptcy Code, a plaintiff must

establish by a preponderance of evidence that: (1) the defendant made a statement under oath; (2)

the statement was false; (3) the defendant knew the statement was false; (4) the defendant made

the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy

case.[10] The purpose of this section is to "encourage debtors to completely and candidly disclose

their assets, income, expenses, and liabilities so that creditors have adequate information about

the debtor's estate."[11]

      The first element the Lloyds must establish is that Mr. Herchakowski made a statement

under oath.  That element is easily satisfied on these facts because the Federal Rules of

Bankruptcy Procedure provide that "[a]ll petitions, lists, schedules, statements and amendments

thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. §1746."[12]

Courts consistently hold that "[a]ny false statement made in a bankruptcy petition, schedule or

---

[7] Wachovia Bank v. Spitko (In re Spitko), 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006)
[8] Haupt v. Belonzi (In re Belonzi), 476 B.R. 899 (Bankr. W.D Pa. 2012); s*ee also*, Fed. R. Bankr. P. 4005 ("on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.")
[9] 11 U.S.C. § 727(a)(4)(A).
[10] *See, e.g.*, In re Hannan, 477 B.R. 603, 609 (Bankr. W.D. Pa. 2012); s*ee also*, Scimeca v. Umanoff, 169 B.R. 536, 541 (D.N.J. 1993)
[11] In re Bielan, Miklos & Makrogiannis, 2010 WL 1644175 (Bankr. D.N.J. April 21, 2010)
[12] Fed. R. Bankr. P. 1008

statement of financial affairs constitutes a false oath within the meaning of [s]ection

727(a)(4)(A)."[13]

The second elements the Lloyds must establish is that the statements made under oath

were false.  Once again, that is easily satisfied on these facts. The Debtor, when pressed,

admitted at trial that several of the sworn statements in his bankruptcy schedules and SOFA were

incorrect.  For example, on direct examination counsel for the Lloyds asked the following:

Q: The next page is page 12 of 15.  It's the Statement of Financial Affairs.  Again,
question number 1 about your gross income in the one year preceding the filing of  the petition
and the gross amounts during two years  immediately preceding the          calendar year of your
petition you put down none.  That was not correct, was it?

A: No.[14]

After eliciting a few more instances of inaccurate statements by Mr. Herchakowski, counsel for
the Lloyds summarized as follows:

Q: Your original bankruptcy petition which you swore was true at the time was     false,
correct?

A: I already said yes.[15]

Mr. Herchakowski further acknowledged that some of the statements in the schedules and SOFA

are still inaccurate even after he filed three sets of amendments.

The next element under § 727(a)(4)(A) is whether the debtor knew the statement was

false.  For both this determination and the issue of intent, the court must undertake its analysis in

light of the debtor's sophistication and experience.  Mr. Herchakowski's testimony established

that he was experienced in the building trade, ran his own business for many years, and had at

least an average understanding of business terminology. Mr. Herchakowski testified that he had

more than 15 years of experience as a general contractor, and that in the decade prior to that he

---

[13] *See, e.g.,* <u>Neugebauer v. Senese (In re Senese)</u>, 245 B.R. 565, 574 (Bankr. N.D. Ill.
2000)

[14] Transcript of July 10, 2012 at 91

[15] Transcript of July 10, 2012 at 97

had worked as a draftsman for several architectural firms.  Mr. Herchakowski's testimony

demonstrated that he understood the difference between various forms of business ownership[16],

and that he understood the term "account receivable".  In short, Mr. Herchakowski is not an

unsophisticated debtor.  It also bears noting that this is not Mr. Herchakowski's first bankruptcy

filing, [17] and that he was represented by counsel.

With that background in mind, the court turns to the numerous inaccuracies in Mr.

Herchakowski's bankruptcy petition and accompanying filings.  The court need look no further

than the answers contained in the SOFA to find that Mr. Herchakowski knew (or recklessly

disregarded[18]) that his sworn statements were false.  In the SOFA filed with the original

bankruptcy petition, Mr. Herchakowski checked "none" as the answer for every question.  By the

time the third amendment to the SOFA was filed in July 2012, he had significantly changed his

answers.

Perhaps the most glaring omission concerned Question 1 on the SOFA which asks how

much income a debtor received from any source from the beginning of the calendar year until the

case commenced.  Question 1 also asks the debtor to list any income for the two calendar years

immediately preceding the year of filing.  Mr. Herchakowski filed his bankruptcy petition on

December 21, 2010, which means he was required to list his income for 2008, 2009 and most of

2010.  On his original SOFA, he checked the box for "none"; on his first amended SOFA he

checked "none; on his second amended SOFA he checked "none"; and finally on his third

amended SOFA he listed $43,286 from self-employment for the fiscal year period 2010.  So, it

---

[16] Mr. Herchakowski stated that he ran his business as an LLC as opposed to a sole
proprietorship.  Tr. of July 10 at 66.
[17] Mr. Herchakowski filed a previous Chapter 7 case and received a discharge in 1999
[Case No. 98-35403]
[18] Neugebauer v. Senese (In re Senese), 245 B.R. 565 (Bankr. N.D. Ill. 2000) (either a
pattern of concealment or other conduct that suggests reckless indifference to the truth is
sufficient)

was not until a year and a half after his petition was filed (and 4 submissions under oath) that the

debtor finally listed over $40,000 in income he received in the year he filed for bankruptcy.  In

his final amendment, Mr. Herchakowski still failed to list any income for 2008 or 2009.  It is

important to note that this final amendment was made after Mr. Herchakowski testified on direct

at this trial.  In his third amendment to the SOFA, Mr. Herchakowski did not list any income for

2008 and 2009 despite the fact that the evidence presented at trial demonstrates that he received a

check from the Lloyds for $30,800 on February 25, 2008, and Mr. Herchakowski himself

testified that he had income from other jobs in 2008 and 2009.  This lapse may not be excused

based on lack of capacity to understand what was being asked.  At trial, when Mr. Herchakowski

took a moment to actually read Question 1, he admitted that he understood that the question was

asking for two additional years of income.  Notably, the words "two years" are bolded in

Question One.  The court finds that Mr. Herchakowski's own testimony  satisfies the

requirement that the debtor knew the statements he was making were false.

Overall, Mr. Herchakowski demonstrated a staggering level of insouciance when it came

to the accuracy of his fourth SOFA.  Mr. Herchakowski indicated that the "honest mistakes"[19] in

his original petition, first amendment, and second amendment largely resulted from the fact that

he had only skimmed over the filings.  Incredibly, Mr. Herchakowski then testified that he had

only skimmed over his third amendment as well.  The Fifth Circuit Court of Appeals addressed a

similar factual scenario and concluded that stating that bankruptcy forms were filled out in great

haste and that debtor did not bother to go over the forms prepared by their attorney to make sure

they were accurate is not a defense to a § 727(a)(4) action[20].  That view is shared by most courts.

In Sims, the court found that the debtor's assertion that he merely "glanced over" the petition but

---

[19] Tr. of October 18, 2012 at 44
[20] In re Mitchell, 102 Fed. Appx. 860 (5th Cir. 2004)

"didn't really understand it" constituted proof of a "cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor."[21]  The <u>Sims</u> court emphasized that "the Bankruptcy Code requires more than a 'glance over' in reporting assets and transactions".[22]

In defending his mere skimming over this fourth attempt at the SOFA, Mr. Herchakowski stated that he trusted in his lawyer.  It is well established that reliance on the advice of counsel is rarely a defense to a § 727(a)(4)(A) action.  The cases distinguish between good faith reliance on the advice of counsel, which in certain circumstances may negate an intent to defraud under Section 727(a)(4)(A), and reckless indifference to the truth.[23]  This situation can only be viewed as reckless indifference to the truth.  The good faith reliance defense requires full disclosure of all relevant facts to the attorney, and reasonable advice from counsel.[24]  That was manifestly not present here.  The failure to list income for 2008 and 2009, after trial testimony establishing its existence, is not an example of reasonable advice from counsel.  That failure can only be the result of the failure to read the SOFA; blame for that falls on both the debtor and his counsel.[25]  The advice of counsel is not a defense "when the erroneous information should have been evident to the debtor."

---

[21] <u>Mosley v. Sims (In re Sims)</u>, 148 B.R. 553, 557 (E.D. Ark. 1992)

[22] <u>Id.</u>; *see also*, <u>Hatton v. Spencer (In re Hatton)</u>, 204 B.R. 477, 482-83 (E.D. Va. 1997) (mere "glance over" schedules constituted reckless disregard for truth)

[23] <u>United States Trustee v. Arnold (In re Arnold)</u>, 369 B.R. 266 (Bankr. W.D. Va. 2007)

[24] *See, e.g.*, <u>Kaler v. Geller (In re Geller)</u>, 314 B.R. 800, 807 (Bankr. D.N.D. 2004) ("Reliance on attorney advice absolves a debtor of the fraudulent intent required by the false oath discharge exception if such reliance was reasonable and the attorney was fully informed when he gave such advice, especially in a case where neither the debtor nor her attorney manifested any ill intent.")

[25] "A debtor's attorney also bears a significant degree of responsibility in assuring to the best of his or her ability that the schedules are complete and accurate before they are filed." 4 Collier on Bankruptcy ¶ 521.03[3] (15th ed. rev. 2005)

The court now turns to the most difficult of the five elements of the § 727(a)(4)(A)

analysis: determining whether the debtor harbored fraudulent intent.  Virtually all courts hold

that a "reckless disregard of both the serious nature of the information sought and the necessary

attention to detail and accuracy in answering may rise to the level of the fraudulent intent

necessary to bar a discharge". [26]  As the above discussion demonstrates, Mr. Herchakowski

utterly disregarded the serious nature of the information sought and paid no attention to the

details or the accuracy of his answers.  Other omissions in the SOFA included failing to list the

debtor's pending lawsuits, and failing to list the debtor's interest in his business.  While an

inaccurate SOFA (or in this case 4) standing alone may not justify the draconian result of denial

of discharge, courts have found that a series or pattern of errors or omissions may have the effect

of giving rise to an inference of intent to deceive.[27]  In this case, there is a clear pattern of

careless and inaccurate statements.  For example, Schedule B to the bankruptcy petition requires

a debtor to list any bank accounts.  Mr. Herchakowski's original Schedule B checked "none";

Schedule B was not amended as part of the first amendment filed 1/24/11; in the amendment to

Schedule B filed 2/10/11 Mr. Herchakowski listed a business checking account with a balance of

$100 and a joint checking account with a balance of $50; in the  amendment filed 7/13/12 the

balances were changed to $778.12 and $30.30.  In his original Schedule B, Mr. Herchakowski

also failed to list: his title interest in a car he allowed his son to use; household furnishings

valued at $3,000; tools of the trade valued at $1,500; and various smaller items.  None of these

items were of great value, but the cumulative effect is telling.  In addition to an inaccurate

Schedule B, the means-test in Official Form B22A was also inaccurate.  Mr. Herchakowski

failed to include the income of his wife when Form B22 clearly indicates that information is

---

[26] In re Mondore, 326 B.R. 214, 217 (Bankr. W.D.N.Y. 2005)
[27] In re Bren, 303 B.R. 610, 613 (8th Cir. BAP 2004)

necessary if you are married.  His means test also stated that he earned $4,000 a month gross, yet

he reported no bank accounts and no cash on hand.  Mr. Herchakowski also failed to initially

include his wife's income in Schedule I.  As previously noted, "the cumulative effect of false

statements may, when taken together, evidence a reckless disregard for the truth sufficient to

support a finding of fraudulent intent"[28]  In this case, the sheer number of errors coupled with the

numerous, yet still inaccurate, amendments compel the conclusion that Mr. Herchakowski's

cavalier disregard for the truth equates to fraudulent intent.

      In reaching that conclusion, the court did consider the fact that Mr. Herchakowski

testified that he harbored no fraudulent intent.[29]  While the court believes that Mr. Herchakowski

did not file for bankruptcy with a conscious intent to defraud, his actions are viewed differently

under the law.  As the Seventh Circuit explained in In re Chavin,[30] the state of mind of not caring

whether a representation is true or false is known as "reckless disregard" and, at least for

purposes of the provisions of the Bankruptcy Code governing discharge, it is the equivalent of

knowing that the representation is false and material.[31] One reason fraudulent intent is a difficult

element to establish is because the debtor is typically the only person able to testify directly as to

what his intent was, and it is unlikely that a debtor will admit to any fraudulent intent.[32]  Mr.

Herchakowski did not admit any fraudulent intent but his actions spoke louder than his words.

The law does not require direct evidence of fraudulent intent; rather, it is sufficient to prove by

circumstantial evidence either a pattern of concealment and errors or other conduct that suggests

---

[28] In re Duncan, 562 F.3d 688, 695 (5th Cir. 2009)
[29] Q: Mr. Herchakowski, isn't it a fact that you did not ever intentionally, knowingly lie on your bankruptcy petition or schedules?
A: That's correct.  Tr. July 17, 2012 at 130
[30] 150 F.3d 726, 728 (7th Cir. 1998)
[31] Accord, In re Beaubouef, 966 F.2d 174, 178 (5th Cir. 1992); In re Tully, 818 F.2d 106, 112 (1st Cir. 1987)
[32] In re Abramov, 329 B.R. 125 (Bankr. E.D.N.Y.  2005)

reckless indifference to the truth.[33]   On the whole, Mr. Herchakowski's testimony that all of his mistakes were honest simply did not ring true.  His repeated assertions that he "didn't know", "didn't understand" or  was "not an attorney" came across as coached.  Some of the things he claimed not to know were highly suspect given other testimony.  For example, a person who understands the terms "LLC" and "account receivable" should have no problem understanding the meaning of the terms "checking account" and "income".

Finally, to prevail under § 727(a)(4)(A) the Lloyds must establish that the false statements related materially to the bankruptcy case.  In determining whether an omission is material for purposes of § 727(a)(4)(A), "the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors."[34]  Rather, for purposes of § 727(a)(4)(A), the test for "materiality" is whether the subject matter of the false oath "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[35]  Underlying the materiality element is § 727(a)(4)(A)'s purpose of insuring that the chapter 7 debtor has made honest and accurate disclosure of his financial circumstances so the bankruptcy trustee and creditors have sufficient information for the proper administration of the chapter 7 case, without having to conduct costly investigations.[36]  The proper functioning of the bankruptcy system  depends upon the complete and candid disclosure of assets, income, expenses and liabilities of the debtor.  Thus, the omission even of assets having little value can be material.[37] Proof of actual harm to creditors is unnecessary, and the debtor cannot excuse the omission merely by claiming that the undisclosed

---

[33] Neugebauer v. Senese (In re Senese), 245 B.R. 565 (Bankr. N.D. Ill. 2000)
[34] 4 Collier on Bankruptcy, ¶ 727.04[1], at 727–59
[35] Cadle Co. v. Zofko (In re Zofko), 380 B.R. 375 (W.D. Pa. 2007), *quoting*, In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984).
[36] Wachovia Bank v. Spitko (In re Spitko), 357 B.R. 272, 312 (Bankr. E.D. Pa. 2006)
[37] In re Strickland, 350 B.R. 158, 165 (Bankr. D. Del. 2006)

property was of little value to the estate.[38]  Given that standard, the court can easily find that the

omissions by Mr. Herchakowski in this case were material because they related to the disclosure

of assets and income.

Conclusion

The court finds that the Plaintiffs have established all of the elements of § 727(a)(4).  The

court will enter judgment in favor of the Lloyds on Count Five.  The court declines to rule on the

§ 523 counts at this time, since a denial of discharge renders all pre-petition debt

nondischargeable.  Counsel for the Lloyds should submit a form of order in accordance with this

opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: February 19, 2013

---

[38] In re Spitko at 312 (citing cases). *Accord,* In re Strickland, 350 B.R. at 165 (even if
debtor's interest in hair stylist business had nominal value, it would be material since it related to
the debtor's business dealings; therefore disclosure on debtor's Schedules and Statement of
Financial Affairs was required).